Steven Paul SCHULZ, Plaintiff–Appellant,

v.

William LONG; Robert Vanalmsick; Col. Gilbert H. Kleinknecht; Frank C. Bick; Robert W. Flagg; Brainerd Latourette, Jr.; Joseph L. Mason; James Raymond; St. Louis County, Missouri; St. Louis County Police Department, Defendants–Appellees.

No. 94–1256.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1994.

Decided Jan. 3, 1995.

---

Thomas P. Howe, St. Louis, MO, argued (Henry B. Robertson, on the brief), for appellant.

Michael A. Shuman, Clayton, MO, argued, for appellees.

Before HANSEN, Circuit Judge, HENLEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

HANSEN, Circuit Judge.

Steven Schulz appeals the final judgment of the district court[1] granting several defendants summary judgment, granting one defendant judgment as a matter of law, and entering judgment on a jury verdict in favor of the remaining defendant in this 42 U.S.C. § 1983 claimed use of excessive force case. Schulz contends that the district court erred in: (1) granting defendant Robert Vanalmsick judgment as a matter of law; (2) excluding certain evidence at trial; and (3) granting several defendants summary judgment on Schulz's failure to train claim. Finding no error, we affirm.

## I. BACKGROUND

Steven Schulz (hereinafter "Appellant") is a diagnosed paranoid schizophrenic who has been hospitalized on several occasions for mental health treatment, with one hospitalization being an involuntary commitment. On July 17, 1986, Appellant began throwing, breaking, and sawing items in his basement bedroom at the home of his parents, Virgil and Doris Schulz. Virgil Schulz unsuccessfully attempted to negotiate with his son to go to the hospital for treatment. Mr. and Mrs. Schulz then conferred with a psychiatrist who had treated Appellant on a prior occasion. The psychiatrist suggested that the police might have to be called for assistance in taking Appellant to the hospital.

Eventually, Doris Schulz called the police. Defendant Robert Vanalmsick, a St. Louis County Police Officer, arrived first at the Schulz residence. He was joined shortly thereafter by defendant William Long, who is also a St. Louis County Police Officer. Mr. and Mrs. Schulz advised each officer when they arrived of Appellant's mental condition, including his prior involuntary confinement, and that he was destroying items in the basement. Mr. and Mrs. Schulz also informed the officers that Appellant did not have access to weapons, and they did not believe he was dangerous but was in need of treatment at a mental hospital.

Officer Vanalmsick went downstairs shortly before Officer Long's arrival and engaged Appellant in conversation. At the foot of the stairs, Appellant had erected a chest-high barricade, consisting of tables, chairs, boxes, and other items. Officer Vanalmsick stood on the landing at the bottom of the stairwell

---

1. The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

as he spoke with Appellant, who was on the other side of the barricade. When Officer Long arrived, he also went downstairs and stood several steps above Officer Vanalmsick.

During his conversation with the officers, the Appellant stated that if he went to the hospital, he wanted to speak with a "negotiator" upon arrival. However, he would not tell the officers whom he would accept as a negotiator. Appellant also expressed a concern that the officers were going to "rush him" and hurt him. (Trial Tr. at 149.) Officer Vanalmsick assured Appellant that the officers had no plans to "rush him," nor did they intend to hurt him. Approximately fifteen minutes after Officer Long arrived, the conversation began to stagnate with the officers being unable to convince Appellant to go to the hospital. Officer Long then went upstairs and contacted the police dispatcher to send a supervisor to the premises, stating "get here as soon as possible but don't expedite" and then returned to the basement. (Trial Tr. at 92.)

Sometime thereafter Appellant retrieved a single-bladed hatchet from his bedroom area. After several requests from Officer Vanalmsick to put down the hatchet, Appellant acquiesced and set it down on a nearby shelf. As the conversation between Officer Vanalmsick and Appellant continued, Appellant again picked up the hatchet. Officer Vanalmsick testified at trial that during this time, while he did not feel that Appellant was threatening him with the hatchet, he remained concerned about its presence. (Trial Tr. at 150–51.)

After continued dialogue, Appellant apparently relented to Officer Vanalmsick's requests to put down the hatchet and go to the hospital. He told the officers that he wanted to write down their names and pack a few things for the trip to the hospital. He placed the hatchet on an adjacent shelf and returned to his bedroom area. Officer Vanalmsick retrieved the hatchet from the shelf and handed it to Officer Long, who tossed it to the top of the stairs.

Appellant saw the officers remove the hatchet and became incensed. He screamed obscenities at the officers and commenced hurling bricks at them. The officers took shelter from the flying bricks. When Appellant ceased throwing bricks, he looked around confusedly. Officer Vanalmsick decided to try to get past the barricade to subdue Appellant. Officer Vanalmsick testified that he believed the officers were authorized to subdue or control Appellant because an assault had been committed on the officers and Appellant posed a danger to the officers' safety. (Trial Tr. at 158.)

However, Officer Vanalmsick became entangled in the barricade. As he attempted to free himself, he momentarily took his eyes off Appellant. Appellant then retrieved a long-handled, double-bladed ax and began approaching Vanalmsick "at a very deliberate" pace. (Trial Tr. at 101.) Officer Long testified that Appellant was holding the ax with both hands, in a cocked position, with the blade at the top and at about head level. (Trial Tr. at 100–01.) Officer Long then unholstered his gun, pointed it at Appellant, and warned him twice, "Drop the ax or I'll shoot." (Trial Tr. at 101.) Appellant did not respond to these warnings and continued to approach Officer Vanalmsick. When Appellant got within 6–8 feet of Officer Vanalmsick, Officer Long started firing at him. Appellant continued to approach Officer Vanalmsick unimpeded until Officer Long's fourth shot felled him. He ended up about 3–5 feet short of Officer Vanalmsick, who was still entangled in the barricade.

Appellant later commenced this 42 U.S.C. § 1983 action, alleging violations of his rights under the Fourth and Fourteenth Amendments to be free from an unreasonable seizure. Count I of the complaint charged Officers Long and Vanalmsick in their individual capacities with violating these rights. Count II set forth a failure to train claim against St. Louis County, Missouri, as well as various other defendants.

Prior to trial, the district court granted the Count II defendants' motions for summary judgment. At trial, the district court granted Officer Vanalmsick's motion for a judgment as a matter of law. The jury returned a verdict in favor of Officer Long, the only remaining defendant. Appellant appeals.

## II. DISCUSSION

### A. Judgment as a Matter of Law

Appellant contends that the district court erred in granting judgment as a matter of law to Officer Vanalmsick. Appellant argues that a jury question remained concerning whether Officer Vanalmsick was liable for an unreasonable seizure because he set in motion a chain of events which culminated with Appellant being shot. The district court granted Vanalmsick judgment as a matter of law because he did not "seize" Appellant. The district court observed that Vanalmsick did not physically restrain Appellant, did not fire the shots that stopped the Appellant's movement, and in fact, did not even touch Appellant during the encounter. (Trial Tr. at 185–86.)

We review de novo a district court's decision to grant judgment as a matter of law. *Medtronic, Inc. v. ConvaCare, Inc.*, 17 F.3d 252, 255 (8th Cir.1994).

> Judgment as a matter of law is appropriate only where the nonmoving party has presented insufficient evidence to support a jury verdict in his or her favor, and this is judged by viewing the evidence in the light most favorable to the nonmoving party and giving him or her the benefit of all reasonable inferences from the evidence, but without assessing credibility.

*Abbott v. City of Crocker*, 30 F.3d 994, 997 (8th Cir.1994).

The gravamen of Appellant's constitutional claims is that Officers Vanalmsick and Long employed excessive force in the course of subduing him. In *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989), the Supreme Court held that "*all* claims that law enforcement officers used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard...." As a nec-

essary predicate to determining whether the district court erroneously granted Officer Vanalmsick a judgment as a matter of law because he did not "seize" Appellant, we must identify at what point Appellant became "seized" in this case.

A "seizure" occurs only when a citizen is physically touched by law enforcement officers or when he otherwise submits to a show of authority by the officers. *California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 1550–51, 113 L.Ed.2d 690 (1991). An assertion of authority by a law enforcement officer without a corresponding submission by the citizen does not constitute a seizure within the meaning of the Fourth Amendment. *Id.* at 626, 111 S.Ct. at 1550–51. "Neither usage nor common-law tradition makes an *attempted* seizure a seizure." *Id.* at 626 n. 2, 111 S.Ct. at 1551 n. 2.[2]

In *Cole*, we applied *Hodari D.* in addressing the plaintiff's claim that the officers' unsuccessful measures to stop a fleeing truck were "seizures." 993 F.2d at 1332. We stated that "these actions constituted assertions of authority by the officers, but they were not seizures under the Fourth Amendment because Cole did not submit to any of them, nor did any succeed in stopping him." *Id.* at 1333. We held that one becomes seized when the officer's show of authority has the effect of stopping his movement. *Id.* at 1332–33.

Here, the undisputed evidence shows that Officer Vanalmsick did not touch Appellant, nor did Appellant submit to Officer Vanalmsick's show of authority in any way. The most that can be said for Officer Vanalmsick's acts is that they amounted to an attempted seizure, which *Hodari D.* makes clear is not a seizure. Thus, the district court properly granted Vanalmsick's motion for judgment as a matter of law.

---

2. Appellant's argument that *Hodari D.* merely defines what constitutes an arrest as opposed to a seizure is undermined by the language of *Hodari D.* as well as our subsequent analysis of that case in *Cole v. Bone*, 993 F.2d 1328, 1332 (8th Cir.1993). In *Hodari D.*, the Court stated that "[a]s this case comes to us, the only issue pre-

sented is whether, at the time he dropped the drugs, Hodari had been 'seized' within the meaning of the Fourth Amendment." 499 U.S. at 623, 111 S.Ct. at 1549. In *Cole*, we specifically held that *Hodari D.* defines what constitutes a seizure for Fourth Amendment purposes. 993 F.2d at 1332.

### B. Motions in Limine

Appellant next contends that the district court erred in granting the motions in limine of Officers Vanalmsick and Long to exclude evidence that: (a) the officers, by their actions, created the need to use force; (b) they should have responded to the situation in the Schulz basement in a different manner, such as waiting for a supervisor or a SWAT team; and (c) they should have used a lesser degree of force or should have followed a policy of using deadly force only as a last resort. The district court excluded the evidence on the basis that it was irrelevant to the two issues in the case: (1) whether the officers effectuated a seizure; and (2) whether such seizure was unreasonable. (Trial Tr. at 15–17.) "In reviewing this ruling, we must give substantial deference to the district court's decision on the admissibility of evidence, and we will not find error unless the district court clearly abused its discretion." *May v. Arkansas Forestry Comm'n*, 993 F.2d 632, 637 (8th Cir.1993).

As noted above, Appellant's excessive force claim is analyzed under the Fourth Amendment's reasonableness standard. The premise of the district court's ruling excluding the evidence was that Appellant was seized when Officer Long shot him, which is consistent with our determination above on when the seizure occurred. Therefore, we must now determine whether the district court erred in ruling that the excluded evidence was irrelevant to the issue of whether Officer Long's seizure of Appellant was reasonable.

■ Appellant first argues that the district court erred in excluding evidence that Officers Vanalmsick and Long created the need to use the force that was ultimately used. Appellant essentially argues that he should have been allowed to present evidence that the acts of Vanalmsick and Long preceding the seizure caused the circumstances which ultimately led to the need to use deadly force. However, Appellant's argument is foreclosed by Supreme Court case law.

The Supreme Court has stated:

The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer *on the scene*, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force, the [ ] standard of reasonableness *at the moment* applies: 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make *split-second judgments*—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Graham*, 490 U.S. at 396–97, 109 S.Ct. at 1872 (emphasis added) (citations omitted). The Court's use of the phrases "at the moment" and "split-second judgment" are strong indicia that the reasonableness inquiry extends only to those facts known to the officer at the precise moment the officers effectuate the seizure.

■ Our holding in *Cole* confirms this analysis. There we stated that "[t]he Fourth Amendment prohibits unreasonable seizures, not unreasonable or ill-advised conduct in general. Consequently, we scrutinize only the seizure itself, not the events leading to the seizure, for reasonableness under the Fourth Amendment." 993 F.2d at 1333 (citations omitted). We then held that "[i]n analyzing the reasonableness of [the officer's] decision to use deadly force, we examine the information that [the officer] possessed at the time of his decision" to use such force. *Id.* at 1333. This analysis has been adopted by numerous other circuits as well. *See, e.g., Bella v. Chamberlain*, 24 F.3d 1251, 1255 (10th Cir.) (quoting *Cole* in stating that " 'we scrutinize only the seizure itself, not the events leading to the seizure' "), *cert. denied*, — U.S. —, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995); *Carter v. Buscher*, 973 F.2d 1328, 1332 (7th Cir.1992) ("pre-seizure conduct is not subject to Fourth Amendment scrutiny"); *Fraire v. City of Arlington*, 957 F.2d 1268, 1275–76 (5th Cir.) (rejecting as irrelevant evidence that police officer manufactured the circumstances which gave rise to the seizure), *cert. denied*, — U.S. —, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992); *Greenidge v. Ruffin*, 927 F.2d 789, 792 (4th Cir.1991) ("the officer's liability [is to] be determined exclusively upon an examination and weighing of

the information [the officers] possessed immediately prior to and at the very moment [they] fired the fatal shot[s]"). Accordingly, evidence that Officers Vanalmsick and Long created the need to use force by their actions prior to the moment of seizure is irrelevant to the issues presented here, and therefore the district court did not abuse its discretion in excluding it.[3]

■ Appellant next argues that the district court erred in excluding evidence that the officers should have responded in a different manner, or that the officers should have used a lesser degree of force.[4] However, the Fourth Amendment does not allow this type of "Monday morning quarterback" approach because it only requires that the seizure fall within a range of objective reasonableness. *See Cole*, 993 F.2d at 1334. In *Cole* we specifically stated that:

> It could be argued, of course, that [the officer's] decision to use deadly force might not have been the most prudent course of action; other courses of action, such as another stationary roadblock might conceivably have been available. The Constitution, however, requires only that the seizure be objectively reasonable, not that the officer pursue the most prudent course of conduct as judged by 20/20 hindsight vision.

*Id.* (citing *Graham*, 490 U.S. at 396, 109 S.Ct. at 1871–72). Again, other circuits have reached the same or similar conclusions. *See, e.g., Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir.1994) ("as the text of the Fourth Amendment indicates, the appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alterna-

tives available to them"); *Plakas v. Drinski*, 19 F.3d 1143, 1149 (7th Cir.) (holding that "[t]he Fourth Amendment does not require officers to use the least intrusive or even less intrusive alternatives in search and seizure cases. The only test is whether what the police officers actually did was reasonable"), *cert. denied*, — U.S. —, 115 S.Ct. 81, 130 L.Ed.2d 34 (1994).

■ The Fourth Amendment inquiry focuses not on what the most prudent course of action may have been or whether there were other alternatives available, but instead whether the seizure actually effectuated falls within a range of conduct which is objectively "reasonable" under the Fourth Amendment. Alternative measures which 20/20 hindsight reveal to be less intrusive (or more prudent), such as waiting for a supervisor or the SWAT team, are simply not relevant to the reasonableness inquiry. For clarity, the reasonableness inquiry in cases such as this where deadly force is used is simply whether "the officer [using the force] has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 3, 105 S.Ct. 1694, 1697, 85 L.Ed.2d 1 (1985). The district court committed no clear abuse of discretion in excluding this evidence because it focused on what could have been done rather than whether Officer Long had probable cause to believe Appellant posed a significant threat of harm to Officer Vanalmsick.[5]

## C. Summary Judgment

■ Appellant's final argument is that the district court erroneously granted sum-

3. Appellant's reliance upon *Estate of Starks v. Enyart*, 5 F.3d 230, 233–34 (7th Cir.1993), for the proposition that facts prior to seizure may be considered in the reasonableness determination is misplaced. First, *Starks* is contrary to our holding in *Cole*. Further, we believe that *Starks* runs counter to the spirit of *Graham*, wherein the Court indicated that only facts known to the officer immediately prior to the moment of seizure were to be factored into the "reasonableness" calculation.

4. The defendants argue that this issue is unreviewable because the plaintiff did not apprise the court of the substance of this evidence at trial, either through an offer of proof or through the context of the questions asked. However, after

carefully reviewing the record, we believe that the district court was cognizant of the nature and substance of the evidence plaintiff wished to present on this issue. (*See* Trial Tr. at 14–17). Therefore, we will address the merits of this argument.

5. Appellant offers *Hopkins v. Andaya*, 958 F.2d 881, 887 (9th Cir.1992), for the proposition that alternative courses of action are relevant in the reasonableness inquiry. However, that court stated that "we cannot say as a matter of law that Andaya acted reasonably when he then shot the unarmed Stancill four more times. *At the time* of the second shooting, it was far from clear that Andaya reasonably feared for his life." *Id.* (emphasis added). Thus, given the court's focus

mary judgment to the Count II defendants on his failure to train claim. Appellant argues that the Count II defendants are liable for his injuries because they failed to show that they had a custom or policy in place at the time of the incident in this case which provided training for officers in the use of deadly force and/or handling mentally disturbed persons. It is the law in this circuit, however, that a municipality may not be held liable on a failure to train theory unless an underlying Constitutional violation is located. *See Abbott*, 30 F.3d at 998. Given our disposition above that the district court correctly granted Officer Vanalmsick judgment as a matter of law, coupled with the jury's determination that Officer Long committed no Fourth Amendment violation, there exists no underlying Constitutional injury upon which Appellant may premise his failure to train claim. The district court committed no error in granting summary judgment to the Count II defendants.[6]

## III. CONCLUSION

For the reasons enumerated above, we affirm the judgment of the district court.

on the reasonableness of the seizure according to the circumstances existing *at the time* of the seizure, we read *Hopkins* to be consistent with our holding in this case. To the extent it is inconsistent with our law, we decline to follow it.

**6.** Appellant's reliance on the Ninth Circuit's decision in *Hopkins*, 958 F.2d at 888, in support of

his argument that the Count II defendants may be held liable regardless of our disposition of the claims against Officers Vanalmsick and Long is unpersuasive because it is contrary to our existing case law.