# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 04-2702

_____

Jack Lacy and Gwen Lacy,   *
             *
   Plaintiffs - Appellants,  *
             * Appeal from the United States
   v.           * District Court for the Western
             * District of Missouri.
City of Bolivar, Missouri, a municipal *
corporation; Larry Wollard; William *
Thompson; Springfield Nephrology *
Associates, Inc.; David L. Sommerfield, *
             *
   Defendants - Appellees.  *
             *

_____

Submitted: April 14, 2005
Filed: August 2, 2005

_____

Before MELLOY, COLLOTON, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

Plaintiffs-Appellants Jack Lacy and Gwen Lacy appeal the district court's[1] grant of summary judgment. The Lacys argue that there are material issues of fact surrounding the detention of Jack Lacy pursuant to Mo. Rev. Stat. 632.305. We affirm.

I. Background

In September 2001, Jack Lacy was a patient at the Butterfield Dialysis Clinic (the "Clinic") in Bolivar, Missouri. Mr. Lacy received dialysis treatment for renal failure. During this time, Mr. Lacy suffered from, and was taking medication for, depression. Mr. Lacy's depression was sufficiently severe that he had suicidal thoughts and had commented at times that he felt like "going out in the yard and just blowing [his] brains out." In response to these statements, Mrs. Lacy attempted to remove all guns and firearms from the house so that Mr. Lacy could not harm himself.

In the summer of 2001, Mr. Lacy began having problems at the Clinic. Dr. David Sommerfield, Mr. Lacy's physician at the Clinic, observed disagreements involving Mr. Lacy and heard complaints about Mr. Lacy from Clinic personnel. Mr. Lacy also shared his feelings of depression with Dr. Sommerfield during his treatment at the Clinic.

Sometime prior to September 10, 2001, Mr. Lacy got into a heated discussion at the Clinic with one of the employees. The employee allegedly made a comment to Mr. Lacy to the effect of "when's all this mess going to stop?" in reference to Mr. Lacy's problems with the Clinic. Mr. Lacy responded by asking, "What do I have to do to please you? Bring a gun and blow my brains out in here?" Mr. Lacy also said that if a certain nurse at the Clinic was a man, he would "kick her ass." On

---

[1] The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

September 10, 2001, Mr. Lacy had a conversation with Cathy Meyers, a Clinic employee. In that conversation, he confirmed that he had made the prior comment about blowing his brains out. Janet Baker, a nurse who overheard the call from Mr. Lacy, reported that Mr. Lacy said "it would be a sad day in Bolivar" when he would bring a "shotgun up there and blow [his] brains out." Ms. Meyers told Dr. Sommerfield of the conversation, which caused Dr. Sommerfield to be concerned about the severity of Mr. Lacy's depression. Dr. Sommerfield then contacted Dr. James Neal, a psychiatrist at the Marian Center in Springfield, Missouri.[2] Dr. Sommerfield told Dr. Neal about Mr. Lacy and the comments he made. Dr. Sommerfield expressed concern about Mr. Lacy's mental state. Dr. Neal then recommended that Mr. Lacy be placed on a 96-hour hold for psychiatric evaluation.

After his conversation with Dr. Neal, Dr. Sommerfield called the Bolivar Police Department and informed them that Mr. Lacy had threatened to kill himself at the Clinic. Officers Larry Wollard and William Thompson were dispatched to the Clinic to investigate the alleged threats. Officer Wollard initially spoke with a staff member at the Clinic by telephone. Officer Wollard was told that a patient, later identified as Mr. Lacy, was scheduled for dialysis and that the staff had concerns regarding his behavior. After speaking with the Clinic staff member Officer Wollard and Officer Thompson went to the Clinic.

Upon arriving at the Clinic, Officer Wollard spoke with various employees, including Dr. Sommerfield, to gather information about Mr. Lacy. Based on his conversation with the staff at the Clinic, Officer Wollard decided that reasonable cause existed to believe that Mr. Lacy needed to be placed under a 96-hour hospital hold for evaluation. Officer Wollard set out the factual basis for his decision in his

---

[2]The Marian Center is a mental health facility at St. John's Regional Health Center in Springfield, Missouri.

detention application. The application was accompanied by supporting affidavits from Dr. Sommerfield and other Clinic personnel.

When Mr. Lacy arrived at the Clinic, he was met outside by Officer Wollard, Officer Thompson, Dr. Sommerfield, and other Clinic employees. Officer Wollard and Officer Thompson informed Mr. Lacy that he was going to be taken to the Marian Center for a psychiatric evaluation. The officers told Mr. Lacy that he was going to be detained for a 96-hour hold. In fact, Officer Thompson showed the information he had regarding the hold to Mr. Lacy. Mr. Lacy was then read the information from a clipboard.

Mr. Lacy told Officer Wollard that if he was not going to get his dialysis that day, he was going to go home. Officer Wollard and Officer Thompson told Mr. Lacy that he could not just go home, that he had to accompany them to the Marian Center. Officer Wollard and Officer Thompson tried to take hold of Mr. Lacy. Mr. Lacy resisted, attempting to leave three or four times. In particular, when Officer Wollard tried to grab Mr. Lacy's wrist to prevent him from leaving, Mr. Lacy pulled his arms and wrists away and moved his body to avoid being grabbed. Mr. Lacy then made a motion with his arms that Officer Wollard and Officer Thompson perceived as an attempt to strike either Officer Thompson or Dr. Sommerfield. The two officers forcibly restrained Mr. Lacy and tried to place him in handcuffs. Mr. Lacy continued to struggle to avoid being handcuffed. Officer Wollard and Officer Thompson eventually handcuffed Mr. Lacy with his hands in front of him. Officer Wollard and Officer Thompson then took Mr. Lacy to Citizens Memorial Hospital to treat him for cuts and scrapes to his wrists. Following treatment, they took Mr. Lacy to the police station and then to the Marian Center. Mr. Lacy was later convicted of unlawful interference with the performance of the duties of a police officer as a result of the exchange.

Once he arrived at the Marian Center, Mr. Lacy told the staff that he felt like he was at the end of his rope, that he was sinking "into a dark hole," and that he was "ready to give up." Dr. Neal reviewed the detention application and the supporting affidavits completed to hold Mr. Lacy for evaluation. Based on his review of that information, Dr. Neal concluded that reasonable cause was present to believe that Mr. Lacy may have been suffering from a mental disorder and that there was a likelihood that Mr. Lacy could have caused serious harm to himself or others and that such a danger was sufficiently imminent to warrant the hold and psychiatric evaluation. Mr. Lacy was held from September 10, 2001 to September 13, 2001, during which time he was evaluated and counseled by Dr. Neal.

The plaintiffs brought this action under 42 U.S.C. § 1983 against Springfield Nephrology, Dr. Sommerfield, the City of Bolivar, and Officers Larry Wollard and William Thompson. The plaintiffs claim that Mr. Lacy's detention was unlawful and in violation of Missouri state law and the Fourth and Fourteenth Amendments to the Constitution. The plaintiffs also brought state tort law claims of improper detainment as part of the same litigation. Mrs. Lacy alleges a loss of consortium claim. Upon close of discovery, the appellees filed a motion for summary judgment. The district court granted the appellees' motion as to both the § 1983 claim and state tort claims. The Lacys now bring this timely appeal.

II. Discussion

We review de novo the district court's grant of summary judgment. Murphy v. Missouri Dept. of Corrs., 372 F.3d 979, 982 (8th Cir. 2004). Summary judgment is appropriate if the evidence demonstrates that no genuine issue of material fact exists. Fed. R. Civ. P. 56.

The plaintiffs' arguments, however framed, appear to allege a violation of the Missouri statute permitting detainment of an individual for psychiatric evaluation,

unreasonable seizure, and unreasonable use of force.  The actions of the defendants in this case were authorized under Missouri law, were objectively reasonable, and did not involve the use of excessive force.  Thus, each of the plaintiffs' claims fail as a matter of law.

Missouri Revised Statute  § 632.305(3) sets forth the procedure by which a person may be detained for evaluation and treatment for purposes of a 96-hour hold.  The relevant provision states:

> [A] peace officer may take a person into custody for detention for evaluation and treatment for a period not to exceed ninety-six hours only when such . . . peace officer has reasonable cause to believe that such a person is suffering from a mental disorder and that the likelihood of serious harm by such person to himself or others is imminent unless such person is immediately taken into custody.  Upon arrival at the mental health facility, the peace officer . . . who . . . caused him to be conveyed shall . . . complete an application for initial detention for evaluation and treatment for a period not to exceed ninety-six hours which shall be based upon his own personal observations or investigations and shall contain the information required in subsection 1 of this section.

Mo. Rev. Stat. § 632.305(3).  It is undisputed that Officer Wollard was the officer in charge who performed the investigation and made the decision to detain Mr. Lacy.  Officer Wollard, as a police officer, is a peace officer for purposes of the statute.  The record indicates that Officer Wollard had "reasonable cause to believe" that Mr. Lacy was suffering from a mental disorder and that he posed an imminent risk to himself or others.  Id.  Mr. Lacy made statements to Dr. Sommerfield and others at the Clinic on multiple occasions prior to September 10th that he was depressed and that he might take a "shotgun up there and blow [his] brains out."  Mr. Lacy also made statements by phone on September 10th that he would bring a shotgun to the Center. Mr. Lacy's admissions are supported by affidavits from Dr. Sommerfield and

-6-

other Clinic employees. In addition to Mr. Lacy's own statements, Dr. Sommerfield observed Mr. Lacy's depressed and violent state of mind. He stated in an affidavit that Mr. Lacy had previously expressed a desire to fight other patients because of their constant talking and to "do physical violence towards one of our female nurses." Dr. Sommerfield also attested that Mr. Lacy had thoughts of physical violence toward others to the point that Clinic staff and other patients were fearful. These threats combined with Mr. Lacy's admissions of depression and Dr. Sommerfield's observations provided a sufficient basis for Officer Wollard to believe that Mr. Lacy was suffering from a mental disorder and posed a risk to himself and others at the Clinic.

Mr. Lacy argues that the fact that he was unarmed at the time of the incident suggests that he did not pose threat of imminent danger to himself or others as required by Missouri statute. "[T]he reasonableness inquiry extends only to those facts known to the officer at the precise moment the officers effectuate the seizure." Schulz v. Long, 44 F.3d 643, 648 (8th Cir. 1995). Neither Officer Wollard nor Officer Thompson, at the time they approached Mr. Lacy, knew whether he was armed. A reasonable officer could have believed that either Mr. Lacy was armed or easily could obtain a weapon, such as from the car, and do harm to himself or people at the Clinic. Moreover, as shown by Mr. Lacy's attempts to resist arrest in which he made a motion that was perceived as an attempt to strike either Officer Thompson or Dr. Sommerfield, it is possible to cause harm without possessing a weapon. Mr. Lacy's lack of a weapon does not disprove a threat of imminent danger. Accordingly, we agree with the district court that the detainment of Mr. Lacy was in compliance with Missouri state law and was objectively reasonable.

Missouri Revised Statute § 632.440 provides, "no peace officer responsible for detaining a person pursuant to this chapter . . . shall be civilly liable for detaining, transporting, conditionally releasing, or discharging a person pursuant to this chapter . . . so long as such duties were performed in good faith and without gross

negligence." Mo. Rev. Stat. § 632.440. The facts of this case indicate that Officer Wollard and Officer Thompson had reasonable cause to believe that Mr. Lacy was suffering from a mental disorder and that he was an imminent threat to himself and others. Further, there is no evidence that either Officer Wollard or Officer Thompson carried out their duties in bad faith, nor are there facts that suggest that the officers detained Mr. Lacy with gross negligence. Because the officers' actions were authorized by Missouri law and were performed in good faith and without gross negligence, the plaintiffs' claims fail.

The plaintiffs also allege that the defendants' use of force was objectively unreasonable. We use a reasonableness standard to analyze claims of excessive force. Graham v. Conner, 490 U.S. 386, 395 (1989). We look at "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. Further, the officers' actions "must be judged from the perspective of a reasonable officer on the scene, rather with the 20/20 vision of hindsight." Id. at 396. In this case, the officers' use of force was objectively reasonable. The officers were authorized to detain Mr. Lacy. Mr. Lacy was known to Officer Wollard and Officer Thompson to be someone who had made threats of violence against himself and others. Mr. Lacy, a former law enforcement officer, admitted that he had resisted the officers' efforts to take him into custody and that his attempts to leave were contrary to the officers' instructions. These actions made it necessary to use some force to restrain Mr. Lacy. Mr. Lacy's injuries from the incident consisted of only minor cuts and abrasions. A reasonable jury could not conclude that the injuries were the result of excessive force. Mr. Lacy's injuries were treated immediately. Mr. Lacy has not produced any evidence that shows the officers' use of force was unreasonable or excessive.

The plaintiffs allege no facts or arguments that address separate Fourth Amendment claims beyond those already discussed above. Accordingly, we need not address any such questions here.

Finally, the district court did not err in granting summary judgment in favor of Springfield Nephrology Associates, Inc., Dr. David Sommerfield, and the City of Bolivar. Since the seizure itself was authorized under Missouri law, was not unreasonable, and did not involve the use of excessive force, there can be no finding of liability, vicarious or direct, for these parties.[3]

For the foregoing reasons, we affirm the decision of the district court.

_____

---

[3]Because of our conclusion that the detention was authorized and reasonable, it is not necessary to analyze whether Dr. Sommerfield or Springfield Nephrology Associates, Inc. constitute state actors.