927 A.2d 83

Louis E. RANDALL, Jr.

v.

William M. PEACO, et al.

No. 852, Sept. Term, 2006.

Court of Special Appeals of Maryland.

July 3, 2007.

John J. Condliffe, Towson and Thomas A. Pavlinic, Annapolis, for appellant.

Rachael Abramson (Mary C. Crawford, Deputy County Attorney, on the brief), Upper Marlboro, for appellee.

Panel: SALMON, BARBERA, WILLIAM W. WENNER, (Retired, specially assigned), JJ.

BARBERA, J.

Louis E. Randall, Jr., appellant, is an adult suffering from schizophrenia. He lives with his mother, Winona Randall. In May 2001, Ms. Randall called the Prince George's County Police Department and asked that police to come to her house and assist in transporting appellant to the hospital. The police responded to the house and tried to convince appellant to come outside. After a five-hour barricade, members of the Emergency Services Team entered the house and found appellant in bed with a butcher knife in his hand. We shall detail later what led one of the officers, Corporal Peaco, moments thereafter to shoot appellant multiple times, severely injuring him.

In May 2004, appellant brought suit against Corporal Peaco and Prince George's County, Maryland, appellees. The complaint, as amended, alleged negligence, gross negligence, and

battery by Corporal Peaco, and violations of Articles 24 and 26 of the Maryland Declaration of Rights by Corporal Peaco, and, under the doctrine of *respondeat superior,* Prince George's County. Appellant requested $15,000,000.00 in compensatory and punitive damages, plus interest and costs.

Appellees filed a motion for summary judgment, arguing that there were no disputes of material fact and that Corporal Peaco was immune from suit because he acted without malice during the performance of a discretionary, official duty.[1] The court issued a memorandum opinion and order granting summary judgment in favor of the appellees on all counts of the amended complaint. On appellant's motion to alter or amend the judgment, the court held a hearing and, following it, issued a memorandum opinion and order denying the motion and clarifying its analysis in support of the grant of summary judgment.

Appellant argues that the court erred as a matter of law when it granted summary judgment in favor of appellees on the counts alleging battery and the state constitutional violations. He concentrates his argument on the contention that the court wrongly determined that no reasonable finder of fact could have found that Corporal Peaco acted unreasonably when he shot appellant. We disagree and affirm the summary judgment.

## FACTS

The facts are, in appellant's words, "not substantially in dispute."[2] In 1986, appellant was diagnosed with schizophre-

---

1. Public officials of Maryland counties enjoy the statutory immunity provided by Maryland Code (2006) § 5–507(b)(1) of the Courts and Judicial Proceedings Article ("CJ"). *Livesay v. Baltimore County,* 384 Md. 1, 11–12, 862 A.2d 33 (2004). CJ § 5–507(b)(1) provides:

   An official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action.

2. We shall see that appellant recalled only some of the events surrounding the shooting. To the extent that appellant's recollection is more

nia, for which a doctor prescribed medication to control hallucinations. Appellant took the medication as prescribed for years, but stopped taking it in late 2000, because it caused him to gain weight.

On May 10, 2001, at approximately 8:15 p.m., appellant was in the kitchen of his home, using a paring knife to cut up strawberries. He started hearing voices that were "mumbling words" and began to feel "a little agitated" and "a little uneasy."

Ms. Randall observed appellant behaving erratically. At approximately 9:00 p.m., she telephoned the Prince George's County Police Department and asked the police for assistance in transporting appellant to the hospital for medical attention. When officers arrived at appellant's home, Ms. Randall informed them that appellant was schizophrenic, appeared to be off his medication, and had displayed "unusual behavior" that evening while cutting strawberries with a knife. She also informed the police that there were no guns in the house and appellant had not threatened or harmed anyone.

Sometime that evening, Ms. Randall contacted appellant's younger brother, Shawn Randall. He arrived at the house after the police did. Shawn yelled inside the house in an unsuccessful attempt to persuade appellant to come outside.

At approximately 10:45 p.m., the police declared a barricade, and the Prince George's County Police Emergency Services Team ("EST") was dispatched to the home. Among the team were Corporal Jose Rodriguez and Corporal William Peaco.

Corporal Rodriguez and Corporal Peaco testified by way of deposition about the events of that night. According to their depositions, police negotiators were unable to convince appellant to come outside, and, at 3:00 a.m., the EST personnel entered the house. Corporal Rodriguez and Corporal Peaco

---

detailed than, or conflicts with, that of the officers and is material to the claims, we shall consider, during our discussion, *infra*, the facts and reasonable inferences that can be drawn from the facts in the light most favorable to appellant, as the party opposing summary judgment.

located appellant in his bedroom behind a closed door. They positioned themselves behind body shields and opened the bedroom door. Corporal Rodriguez, who was the operation's "point officer," crouched at the doorway. Corporal Peaco, who was the primary "cover officer" and assigned to protect Corporal Rodriguez, stood behind him. Corporal Peaco was armed with a department-issued nine millimeter submachine gun. Throughout the events that immediately followed, both officers remained in the doorway to the room.

Appellant sat up in his bed, and Corporal Rodriguez observed a butcher's knife in appellant's right hand. Appellant got out of bed, "moved directly to the wall and then started down the wall" towards the officers. Corporal Rodriguez commanded appellant, at least once, to drop the knife. Appellant did not comply.

Corporal Rodriguez called for an ARWEN, which is a weapon that shoots a rubber baton. The ARWEN evidently was in the possession of other EST personnel, elsewhere in the house. Meanwhile, appellant continued to move towards the officers, with the butcher knife in his hand. Corporal Peaco, believing that appellant posed a significant threat of death or serious physical injury, fired five shots from the submachine gun into appellant's torso, within a two-second time span. Corporal Peaco testified in his deposition that appellant was "well inside 15 feet" when he discharged his weapon, and he stated in a police report that appellant was "4–5 feet" away from him when he fired. According to the officers, appellant retained hold of the knife after being shot. Once appellant fell to the ground, Corporal Rodriguez used his shield to move the knife away from appellant. The shooting occurred before the ARWEN was delivered to the bedroom.

Appellant testified in his deposition that, on the night of the shooting, he went into his bedroom with a 13–inch butcher knife and got into bed with the knife. He does not remember seeing police officers at the doorway of his bedroom or hearing the officers give him commands. Appellant stated that he got out of bed and crawled towards the doorway with the knife

in his hand. He rose to his knees at the doorway to put down the knife. Appellant stated that there was a person with a shield six inches away from him at the time. Before he could put down the knife, he was shot. He then dropped the knife and was shot seven more times. He does not remember receiving medical treatment that night.

## THE LAWSUIT

Appellant filed a complaint in the Circuit Court for Prince George's County, which, after amendment, contained four counts. Count I alleged that Corporal Peaco was negligent by, among other things, using lethal force, rather than a non-lethal alternative, to subdue appellant, and failing to consult with mental healthcare providers. Count II alleged that Corporal Peaco's decision to use lethal force was a gross departure from the conduct of an ordinarily careful and prudent police officer, and was beyond the scope of his official authority as a police officer. Count III alleged that Corporal Peaco committed a battery upon appellant, by intentionally and unlawfully shooting him. Count IV alleged that Corporal Peaco violated Articles 24 and 26 of the Maryland Declaration of Rights by employing "objectively unreasonable, unnecessary and excessive force," and Prince George's County (hereafter, the "County") has *respondeat superior* liability for the acts of Corporal Peaco. Appellant sought $5,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, interest, and costs.

Appellees answered the amended complaint, asserting immunity, among other defenses. Appellees then filed a motion for summary judgment, arguing that there were no disputes of material fact and that appellees were entitled to judgment as a matter of law. Appellees supported the motion with the depositions of appellant, Ms. Randall, Shawn Randall, the affidavits of Corporal Rodriguez and Corporal Peaco, and a copy of a photograph depicting the 13–inch butcher knife that appellant was holding when he was shot. The depositions of Corporal Rodriguez and Corporal Peaco, which had been attached to appellees' answer, were also before the court.

During the hearing on the summary judgment motion, counsel for appellant stated:

> We don't allege malice because we don't think that Corporal Peaco went into that residence to kill Mr. Randall. We don't say that he was some sort of monster that went in there for the perversion of killing him. We've alleged that Corporal Peaco was at the least negligent in what he did, and at the worst, he was grossly negligent because he shot a man that didn't have a firearm, who was attempting to put down a knife, five times and not from the front, but from the side.

Following the hearing, the court issued a memorandum and order granting summary judgment in favor of appellees. The court reasoned that, because Corporal Peaco did not act with malice, as appellant conceded, Corporal Peaco was immune from suit on both the constitutional and common law tort claims (Counts I through IV). The court noted that the County, as a local government entity, had *respondeat superior* liability for civil damages resulting from constitutional violations committed by its agents. The court ruled that because Corporal Peaco was immune from suit and therefore entitled to summary judgment, the County also was entitled to summary judgment on the single claim in which it was named (Count IV).

Appellant filed a timely motion to alter or amend the judgment. In the motion, appellant argued, *inter alia,* that the question of whether a police officer acted with malice is for the fact-finder and cannot properly be disposed of on summary judgment. He further argued that a public official who violates a person's constitutional rights is entitled to no immunity and that immunity is not a defense to intentional torts.

Appellees filed a response to the motion, arguing, *inter alia,* that there was no evidence affirmatively showing ill will, improper motivation, or evil purpose on the part of Corporal Peaco. They contended that, under the circumstances, Corporal Peaco acted reasonably. Further, they pointed out that counsel for appellant stated at the hearing on appellees'

motion for summary judgment that appellant did not allege malice.

Following a hearing, the court issued a memorandum and order denying the motion. The court wrote: "The facts in this case present no possibility that an inference of actual malice on the part of [Corporal Peaco] could be drawn." Consequently, the court ruled, Corporal Peaco was immune from suit for negligence and gross negligence (Counts I and II), and summary judgment was properly granted on those counts. With regard to Count III, battery, the court, quoting *Thomas v. City of Annapolis*, 113 Md.App. 440, 457, 688 A.2d 448 (1997), wrote:

> "Even though qualified immunity is not applicable to intentional acts, it is important to bear in mind that a public official, such as a policeman or fireman, in performing his or her discretionary duties within the cope of employment, in the absence of actual malice and without knowledge of the wrongdoing generally will not have committed actionable conduct.[3]"

To assess the lawfulness of Corporal Peaco's decision to shoot appellant, the court applied the reasonableness standard that the Supreme Court announced in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), about which we shall say more later in this opinion. The court reviewed the evidence presented in support of and in opposition to the motion for summary judgment and concluded that "no reasonable finder of fact could conclude that [Corporal Peace] acted unreasonably in shooting [appellant]." Accordingly, the court found that summary judgment was properly granted on the battery count.

With regard to the state constitutional claims, the court noted that " '[i]n Maryland, qualified immunity does not apply to constitutional claims[,]' " (quoting *Williams v. Prince George's County*, 112 Md.App. 526, 546, 685 A.2d 884 (1996)).[4]

---

3. *But see Lee v. Cline*, 384 Md. 245, 863 A.2d 297 (2004).

4. *See supra* note 3.

Applying the reasonableness standard set forth in *Graham,* *supra,* the court concluded that, for the same reasons that summary judgment in favor of Corporal Peaco was appropriate on the battery count, it was also appropriate on the count charging violation of Articles 24 and 26. The court further noted that the County " 'cannot be liable on a theory of *respondeat superior* if the actions of the officer did not violate the constitution, and the [Plaintiff] has not alleged independent, separate grounds against the County[,]' " (quoting *Williams,* 112 Md.App. at 549, 685 A.2d 884). Consequently, the court ruled, the County was entitled to summary judgment, as well.

Appellant noted this timely appeal.

## DISCUSSION

Appellant challenges the grant of summary judgment in favor of appellees on the counts charging a violation of Article 24 and Article 26 of the Maryland Declaration of Rights, and battery. Appellant dedicates his argument to a discussion of whether the record permitted the court to conclude, as a matter of law, that Corporal Peaco's act of using potentially lethal force against appellant was objectively reasonable. He frames the issue as follows: "The question for resolution before this court is whether, as a matter of law, the reasonable inferences to be drawn from the facts of this case, which are not substantially in dispute, allow for presentation of the case to a jury as finder of fact."

Appellant further narrows the contention on appeal to whether a finder of fact should be permitted to consider the events leading up to the shooting, in particular, the officers' decision to go to appellant's bedroom without the non-lethal weapon—the ARWEN—and to infer from that fact that Corporal Peaco acted unreasonably when he resorted to lethal force to subdue appellant. Appellant elaborates on the contention as follows:

The simple question in this case is whether the finder of fact focuses only on the brief moment in time in [ ] Louis

Randall's bedroom, probably less than a minute, when [ ]
Louis Randall allegedly posed a threat [to] the police officer
defendant with a knife. Or does the finder of fact consider
the circumstances that led Officer Peaco to enter the room
when an officer armed with non-lethal force for the express
purpose of dealing with Mr. Randall non-lethally was left
behind.

Notably, appellant does not contend, and thereby implicitly
concedes, that the conduct of Officer Peaco was reasonable if
assessed solely by reference to the circumstances that con-
fronted him when he made the decision to shoot appellant.

As we read appellant's assertions, he presents the purely
legal question of whether he should be entitled to have a fact
finder assess the reasonableness of Officer Peaco's decision to
use lethal force by resort to antecedent events. He points out
that he presented evidence of such events from which a fact
finder could infer that Corporal Peaco acted unreasonably in
shooting him.

■ Appellant's contention fails in its premise. The law in
Maryland, and in a number of federal courts and our sister
states, is that events that are antecedent to the conduct of the
officer at issue do not bear on the objective reasonableness of
that conduct.

Before considering the merits of appellant's claim that the
court wrongly granted summary judgment, we briefly review
the law on that subject. "[S]ummary judgment is appropriate
'on all or part of an action on the ground that there is no
genuine dispute as to any material fact and that the party is
entitled to judgment as a matter of law.' " *Haas v. Lockheed
Martin Corp.*, 396 Md. 469, 478, 914 A.2d 735 (2007) (quoting
Md. Rule 2–501). "The question of whether a trial court's
grant of summary judgment was proper is a question of law
subject to *de novo* review on appeal." *Myers v. Kayhoe*, 391
Md. 188, 203, 892 A.2d 520 (2006).

" 'An appellate court reviewing a summary judgment exam-
ines the same information from the record and determines the
same issues of law as the trial court.' " *Haas*, 396 Md. at 478–

79, 914 A.2d 735 (quoting *United Servs. Auto Ass'n v. Riley,* 393 Md. 55, 67, 899 A.2d 819 (2006)). The Court must "review the record in the light most favorable to the nonmoving party and construe any reasonable inferences that may be drawn from the facts against the moving party." *Myers,* 391 Md. at 203, 892 A.2d 520 (citations and internal quotation marks omitted). Generally, "we review only the grounds upon which the trial court relied in granting summary judgment." *River Walk Apartments, LLC v. Twigg,* 396 Md. 527, 541–42, 914 A.2d 770 (2007) (citation and internal quotation marks omitted).

■ Turning to the merits, appellant acknowledges that the propriety of the court's decision to grant summary judgment on the state constitutional claims and the intentional tort of battery turns on the question of whether Corporal Peaco's use of potentially lethal force was objectively reasonable. Moreover, appellant does not argue that a different test applies to his claim under Article 24, Maryland's analogue to the Fourteenth Amendment, than under Article 26, Maryland's analogue to the Fourth Amendment. Nor could he successfully do so, given that a claim of excessive force brought under Article 24 is analyzed in the same manner as if the claim were brought under Article 26. *Okwa v. Harper,* 360 Md. 161, 203–04, 757 A.2d 118 (2000); *Williams,* 112 Md.App. at 547, 685 A.2d 884. In both instances, the claim is assessed under Fourth Amendment jurisprudence, rather than notions of substantive due process, precisely like the analysis employed for claims brought under 42 U.S.C. § 1983. *See Graham,* 490 U.S. at 388, 109 S.Ct. 1865; *Richardson v. McGriff,* 361 Md. 437, 452, 762 A.2d 48 (2000); *Okwa,* 360 Md. at 204, 757 A.2d 118.

The test for determining the objective reasonableness of the officer's conduct for purposes of deciding a claim of excessive force brought under the state constitution is the test the Supreme Court announced in *Graham.* See *Richardson,* 361 Md. at 445, 762 A.2d 48; *Okwa,* 360 Md. at 204, 757 A.2d 118. The Supreme Court stated in *Graham:*

Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because [t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

490 U.S. at 396, 109 S.Ct. 1865 (citations and some quotation marks omitted).

Appellant recognizes that, to be successful in arguing that the reasonableness of Corporal Peaco's conduct must take into account events that preceded it, he must distinguish the facts of his case from those in *Richardson, supra.* That case also involved a claim of excessive force.

The petitioner in *Richardson* was one of several males attending a party in a vacant apartment in an apartment complex. 361 Md. at 440, 762 A.2d 48. After receiving a report of the intrusion, police officers entered the darkened apartment, announced their presence, and began a room-to-room search. *Id.* at 440–43, 762 A.2d 48. While in the kitchen, the officers heard a sound come from the closet. *Id.* at 444, 762 A.2d 48. The officers again announced their presence, and they commanded the occupants of the closet to exit. *Id.* Hearing no response, one officer pulled the closet door open. *Id.* Another officer saw the petitioner standing in the closet holding a pipe from a vacuum cleaner. *Id.* at 442, 444, 762 A.2d 48. Believing the pipe to be the barrel of a large weapon, the officer shot the petitioner. *Id.* at 444, 762

A.2d 48. The petitioner filed suit, alleging violation of his rights under Articles 24 and 26 of the Maryland Declaration of Rights and several common law torts. *Id.* at 441, 762 A.2d 48.

The case proceeded to trial on the claims against the officer for battery, gross negligence, and violation of rights under Article 26. Before the case was submitted to the jury, the respondents sought to preclude the jury from considering the officers' actions before they opened the closet door, namely, their decisions not to call for additional back-up or to turn on the kitchen lights. *Id.* at 444–45, 762 A.2d 48. A supplemental instruction was given to the jury directing it not to consider those antecedent events. *Id.* The jury ultimately returned a verdict in favor of the officers. *Id.* at 441, 762 A.2d 48.

On appeal, the Court of Appeals considered whether the jury properly was limited to considering only those circumstances contemporaneous with the officers' opening of the closet door, or whether the jury was entitled to consider as well the reasonableness of the officers' antecedent conduct. *Id.* at 452, 762 A.2d 48. The Court looked to *Graham* as providing the "touchstone" of the analysis. *See id.* The *Richardson* Court declared that the principle of reasonableness announced in *Graham* "is the appropriate one to apply" to excessive force claims brought under Article 26 and for common law claims of battery and gross negligence, because Article 26 is *in pari materia* with the Fourth Amendment and "decisions of the Supreme Court interpreting the Federal Right are entitled to great respect in construing the State counterpart." *Id.* at 452–53, 762 A.2d 48. The *Richardson* Court further stated that Maryland has adopted essentially the same principle as a matter of State common law, recognizing that a " 'police officer's conduct should be judged not by hindsight but should be viewed in light of how a reasonably prudent officer would respond faced with the same difficult emergency situation.' " *Id.* at 453, 762 A.2d 48 (quoting *Boyer v. State,* 323 Md. 558, 589, 594 A.2d 121 (1991)).

The *Richardson* Court also discussed *Schulz v. Long,* 44 F.3d 643 (8th Cir.1995), a case that is factually similar to the case at bar. In *Schulz,* the parents of the appellant, a paranoid schizophrenic, called the police to help them with the appellant's aberrant behavior. *Id.* at 645. When the police arrived at the home, the appellant was in the basement, where he had erected a barricade. *Id.* Two officers stood at the landing at the bottom of the basement stairwell and attempted to convince the appellant to go to the hospital. *Id.* at 645–46. At some point, the appellant obtained a double-bladed axe and approached one officer in a threatening manner. *Id.* at 646. The other officer ordered the appellant to drop the axe and, when the appellant did not comply, the officer shot him. *Id.*

The appellant brought a federal civil rights action against the officers involved in the incident. *Id.* at 645. The court granted judgment as a matter of law as to one defendant, and a jury found in favor of the remaining defendants. *Id.* On appeal, appellant challenged the exclusion of evidence relating to the officers' actions leading up to the shooting. *Id.* In response to the appellant's argument that the officers should have used a lesser degree of force, the *Schultz* court stated:

> [T]he Fourth Amendment does not allow this type of "Monday morning quarterback" approach because it only requires that the seizure fall within a range of objective reasonableness.... It could be argued, of course, that [the officer's] decision to use deadly force might not have been the most prudent course of action; other courses of action ... might conceivably have been available. The Constitution, however, requires only that the seizure be objectively reasonable, not that the officer pursue the most prudent course of conduct as judged by 20/20 hindsight vision.

\* \* \*

The Fourth Amendment inquiry focuses not on what the most prudent course of action may have been or whether there were other alternatives available, but instead whether the seizure actually effectuated falls within a range of conduct which is objectively "reasonable" under the Fourth

Amendment. Alternative measures which 20/20 hindsight reveal to be less intrusive (or more prudent), such as waiting for a supervisor or the SWAT team, are simply not relevant to the reasonableness inquiry.

*Id.* at 649 (citations and internal quotation marks omitted).

The *Richardson* Court collected numerous other federal and state cases holding that the reasonableness of a police officer's use of deadly force is not measured by what other measures the officer could have employed. We mention just a few. *See, e.g., Salim v. Proulx,* 93 F.3d 86, 92 (2d Cir.1996) (holding that an officer's actions leading up to a shooting were "irrelevant to the objective reasonableness of his conduct at the moment he decided to employ deadly force" and that the reasonableness inquiry "depends only upon the officer's knowledge of circumstances immediately prior to and at the moment he decided to employ deadly force"); *Bella v. Chamberlain,* 24 F.3d 1251, 1256 (10th Cir.1994) (stating that the court, when assessing the reasonableness of an officer's use of force in effecting a seizure, "scrutinize[s] only the seizure itself, not the events leading to the seizure, for reasonableness under the Fourth Amendment"), *cert. denied,* 513 U.S. 1109, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995); *Greenidge v. Ruffin,* 927 F.2d 789, 792 (4th Cir.1991) (holding that an officer's liability under an objective reasonableness standard must be determined exclusively upon an examination and weighing of the information that the officer possessed immediately prior to and at the moment the officer fired the allegedly unlawful shot); *Estate of Lee ex rel. Lee v. City of Spokane,* 101 Wash.App. 158, 2 P.3d 979, 986 (2000) (stating that the court assesses the reasonableness of an officer's use of force "from the perspective of a reasonable officer on the scene, applying a 'standard of the moment' " and "look[ing] only at the actual seizure, not the events leading up to the seizure").

The Court concluded in *Richardson* that the officers who responded to the party in the vacant apartment acted reasonably. 361 Md. at 458, 762 A.2d 48. The Court wrote that "the jury might, perhaps, question the immediate decision by [the officer] to fire his gun when the closet door was opened, but it

would have been sheer hindsight speculation to find that it was unreasonable . . . for the two officers to enter the building and search it." *Id.*

On the question of whether the jury was permitted to consider antecedent events leading up to the shooting, the Court wrote:

> The jury was informed of all relevant antecedent events leading up to the shooting—how the officers came to be there and what they did upon entering the building. What the jury was not allowed to do was second-guess, in hindsight, the officers' decision to enter and search the apartment without additional back-up and without turning on the kitchen light.

*Id.* at 464–65, 762 A.2d 48.

Appellant attempts to distinguish the facts of his case from *Richardson.* He maintains that, although the officers in *Richardson* entered the vacant apartment to conduct a crime investigation, the officers who entered the Randall home were doing so as part of the "community caretaking function." Appellant cites *State v. Alexander,* 124 Md.App. 258, 721 A.2d 275 (1998), in support of this assertion. Yet he offers no argument as to why *Alexander,* a case involving the lawfulness of the warrantless entry into a home pursuant to the community caretaking function, distinguishes his case from *Richardson.* Appellant offers no further argument for why the court's analysis in *Richardson* should not apply with equal force in the present case.

In *Richardson,* the Court of Appeals squarely rejected the notion that the reasonableness of the use of lethal force must involve consideration of antecedent events that would at best involve a hindsight evaluation of the officer's conduct. Indeed, the *Richardson* Court concluded:

> Whether . . . circumstances *in hindsight* could be regarded as negligent or imprudent, they existed and, at the crucial moment, could not be changed. At the moment [the one officer] opened the closet door and McGriff saw what appeared to him to be an armed man lowering his weapon to

firing position, *what was he to do?* Under petitioner's approach, McGriff would have been, at that split-second moment, faced with the impossible choice of either defending himself and, in so doing, risking liability for any harm inflicted on petitioner because of past events or decisions that were then uncorrectable, or taking no defensive action and putting his life in immediate and mortal danger in order to save his pocketbook. The law cannot reasonably put officers in that situation.

361 Md. at 459, 762 A.2d 48.

■ Appellant implicitly concedes that, assessed by reference to the circumstances confronting Corporal Peaco when he shot appellant, he acted reasonably. Even if appellant has not conceded the point, we would conclude that Corporal Peaco acted reasonably. Under *Richardson,* we do not take into account that, in hindsight, it might well have been the better course of action for Corporal Peaco and Corporal Rodriguez to ensure the presence of the ARWEN before opening the door to appellant's bedroom.

It is undisputed that appellant, unmedicated and schizophrenic, was holding a thirteen-inch butcher knife as he approached Corporal Peaco and Corporal Rodriguez. By his own admission, he was a mere six inches away from the officers when he rose to his knees with knife in hand and was shot. But even taking into account Corporal Peaco's description of the distance between him and appellant as "well inside 15 feet" and "4–5 feet" when he fired the weapon, our conclusion would not be different. In that regard, we do not overlook that Corporal Rodriguez was positioned on his knees between appellant and Corporal Peaco. Considering that appellant "pose[d] an immediate threat to the safety of the officers," *Graham,* 490 U.S. at 396, 109 S.Ct. 1865, we conclude, as a matter of law, that Corporal Peaco acted reasonably when he shot appellant.

The reasonableness of a police officer's conduct in a case involving a claim of excessive force can be and has been susceptible to the grant of summary judgment in favor of the

defendant. Indeed, the Supreme Court has upheld summary judgment in just such a case. *See Scott v. Harris,* —— U.S. ——, —— n. 8, 127 S.Ct. 1769, 1776 n. 8, 167 L.Ed.2d 686 (2007) (addressing whether the reasonableness of a police officer's use of force is a question "of fact best reserved for the jury[,]" and noting that, "[a]t the summary judgment stage, [ ] once we have determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record* . . ., the reasonableness of [the officer's] actions . . . is a pure question of law").

Because the undisputed facts and inferences in favor of appellant drawn from them showed that Corporal Peaco acted reasonably when he shot appellant, the court properly granted summary judgment in favor of appellees on the count charging violations of Articles 24 and 26 of the Maryland Declaration of Rights. The court was equally correct in granting summary judgment in favor of Corporal Peaco on the battery count, which, because it was based on what we have concluded was reasonable conduct by the officer, was not an unlawful touching. *See Richardson,* 361 Md. at 445, 762 A.2d 48.

**JUDGMENT AFFIRMED.**

**APPELLANT TO PAY THE COSTS.**